IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| CORALY ROSA RUIZ<br>JULIO A. RIVERA-ALICEA, and their conjugal partnership<br><br>Plaintiffs<br><br>vs<br><br>ELSIE GONZALEZ-GALOFFIN in her official and personal capacities;<br>JOHN DOE, and their conjugal partnershp;<br>WILLIAM VAZQUEZ-IRIZARRY, ESQ., in his official and personal capacities;<br>SUSAN ROE, and their conjugal partnership;<br>THE DEPARTMENT OF JUSTICE OF THE COMMONWEALTH OF PUERTO RICO;<br>CORPORATION ABC,<br>INSURANCE COMPANY DEF,<br>and JOHN DOE<br><br>Defendants | CIVIL 06-1093CCC |

## OPINION AND ORDER

The principal plaintiff in this action, Coraly Rosa-Ruiz, has filed §1983 and Title VII claims against her supervisor Elsie González-Galoffin, former Secretary of Justice William Vázquez-Irizarry and current Secretary Roberto Sánchez-Ramos, in their personal and official capacities, and the Department of Justice of the Commonwealth of Puerto Rico. Invoking supplemental jurisdiction, Rosa-Ruiz has also brought claims under Law 100, 29 L.P.R.A. §146, et. seq., Law 80 of May 30 1976, 29 L.P.R.A. §185(a), Law 17, L.P.R.A. §155 et. seq., Law 115, Article 1802 of the Puerto Rico Civil Code, 31 L.P.R.A. §5141 and Article II, Section 8 of the Constitution of Commonwealth of Puerto Rico.

Defendants have filed a Motion to Dismiss the Amended Complaint under Rule 12(b)(6), Fed.R.Civ.P. (**docket entry 9**) supplemented by docket entry 10, which plaintiff

CIVIL 06-1093CCC                          2

opposed. The following factual allegations set forth in the amended complaint[1] are relevant to the Rule 12(b)(6) analysis:

> 13. Mrs. Rosa began to work for the Office for Special Defense for Families (Procuradora de Familia) at the Department of Justice on May 16, 1999 as a reporter of legal investigations.
>
> 14. From the time Mrs. Rosa began work, she objected to the to the decoration of government offices with witches and goblins during the Halloween season because, as a Pentecostal Christian, she found this celebration of paganism offensive.
>
> . . .
>
> 16. Mrs. Rosa never even received the courtesy of a response to her complaints of the violation of the Establishment Clause of the First Amendment of the United States Constitution.
>
> 17. In October 2004 the Halloween decorations at the Department of Justice were more elaborate, and , if possible, more pagan than ever. In particular there was a carpet that emitted a horrific scream whenever anyone walked on it. This scream was a continual reminder to Mrs. Rosa that her religious beliefs were not respected by her employer.
>
> 18. Mrs. Rosa again complained to her employer through a letter to Alice Fontánez, the Assistant Secretary of Human Resources with a copy to the Secretary of Justice, who at that time was William Vázquez Irizarry, Esq.
>
> 19. Mrs. Rosa also posted information regarding the basis for her complaint about the Halloween decorations. In response, Mrs. Rosa's supervisor, Ms. González Galoffin violently ripped Mrs. Rosa's postings off the wall.
>
> 20. When defendants failed to respond to Mrs. Rosa's letter, she filed a complaint with the EEOC seeking the removal of the Halloween decorations. Although the EEOC found reasonable cause to find that a violation of Mrs. Rosa's religious rights had been violated(*sic*),[2] defendants refused to remove the decorations.

---

[1] The court has corrected grammatical errors as necessary.

[2] This statement is incorrect; the EEOC right-to-sue letter contains no such finding. In fact, it specifically states:

CIVIL 06-1093CCC                                3

21. In October 2005, the issue arose again. When the Halloween decorations were hung, Mrs. Rosa posted notices that the Halloween decorations were offensive due to their numerous pagan references.

22. Defendants' reaction to Mrs. Rosa's actions was first to order her to remove her informational postings. Mrs. Rosa was told that the Halloween decorations would come down as well, but they did not.

23. Instead, Mrs Rosa began to be the subject of various forms of harassment, which affected both her emotional and physical health, including a dramatic increase in her blood pressure.

24. First, Mrs. Rosa had always kept the drafts of handwritten documents given her for transcription, which was the generalized practice in the office. After her complaint to the EEOC, Mr. Rosa's supervisor, Ms. González, through Enrique Perez Acosta demanded that Mrs. Rosa turn over all drafts that she had in possession, indicating (sic).

. . .

26. No other secretary was told to turn over the drafts of work that she had done. Thus, on information and belief, this action was taken in retaliation for Mrs. Rosa filing her complaint with the EEOC.

27. Mrs. Rosa was also prohibited from taking her work break with Ramonita Rohena, with whom she had taken her break for the preceding six years. Ms. Rohena is also an Evangelical Christian and has also complained to the EEOC for religious reasons.

28. On information and belief, this new prohibition was imposed as retaliation for Mrs. Rosa's filing of the complaint for violation of the Establishment Clause with the EEOC.

29. In addition, for the first time in her tenure, Mrs. Rosa was required to be present at the preliminary hearing of a juvenile whose confession she transcribed.

. . .

31. To the best of Mrs. Rosa's knowledge, no other reporter has been asked to appear in Court for this purpose.

CIVIL 06-1093CCC                                 4

>    32. On information and belief, these actions were taken in retaliation for Mrs. Rosa's filing a complaint with the EEOC about the violation of the Establishment Clause of the First Amendment.
>
>    33. Moreover, on September 9, 2005, Mrs. Rosa asked to be transferred to Carolina so that she would not have to continue harassment from Ms. González Galoffin (sic).
>
>    . . .
>
>    36. On information and belief, the decision not to grant Mrs. Rosa the transfer she requested was retaliation for her complaint to the EEOC for the violation of the Establishment Clause of the First Amendment.
>
>    37. Since the filing of the original EEOC complaint and the filing of this Complaint, defendants have intensified their campaign of reprisals against Mrs. Rosa.
>
>    38.  On February 16, 2006, Miguel A. Santana Bagur, Esq., the undersecretary of Justice, sent Mrs. Rosa a letter of reprimand for Misconduct which allegedly occurred in January 2005, September 2005, and January 2006.
>
>    . . .
>
>    41. Mrs. Rosa also received other warnings for long past behavior and began to confront hostility from her supervisors, who seemed determined to provide her  [with] contradictory priorities and instructions.

(Our emphasis.)

Plaintiff raises retaliation against her in all three federal causes of action. The allegations corresponding to each of these claims are drafted in a confusing manner.  Her third claim, for example is a §1983 action based on the alleged violation of her First Amendment rights,  specifically, under the Establishment Clause. This notwithstanding, she includes the allegations of retaliation for actions taken after the filing of the EEOC complaint based on the Establishment Clause. The remaining two federal claims are brought under Title VII. The first, entitled "Title VII Harassment Based on Religion – Hostile Environment,"avers at ¶45 that

CIVIL 06-1093CCC                                5

> "Because defendants created a hostile environment, which was condoned by the corporate co-defendant and Mrs. Ruiz was harassed in retaliation for her complaints about the hostile environment, it was illegal and discriminatory and defendants made the decision without just cause, defendant violated Title VII with knowing and reckless disregard of said Act's proscriptions. Defendants harassed Mrs. Ruiz because of First Amendment or consideration." (sic)

The second claim, entitled "Title VII Harassment in Violation of the Establishment Clause – Retaliation," states that ". . . the decision to harass Mrs. Ruiz was in retaliation for her complaints about the hostile environment." At ¶52 she alleges that

> "defendants engaged in policies and practices which willfully, or in the alternative unwillfully, discriminated against the plaintiff, Mrs. Ruiz, on the basis of her complaints of violations of the Establishment Clause, her EEOC claim, the EEOC's finding of probable cause, and the filing of the instant lawsuit."

These claims are clearly predicated on Title VII's anti-retaliation provision which prohibits as unlawful the practice by an employer to discriminate against an employee "because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter," See 42 U.S.C.§ 2000e-3(a). Although plaintiff has set forth her Title VII claims as two separate causes of action – hostile work environment and retaliation–they are, in fact, a single claim for retaliation brought under the anti-retaliation provision of Title VII, §2000e-3(a). The conduct that allegedly triggered her 2005 EEOC complaint was the placement of Halloween decorations in violation of the Establishment Clause. The retaliatory actions that were allegedly taken after she filed her EEOC charge, as asserted in the amended judicial complaint are: (1) the supervisor's order to turn over all drafts of documents given to her for transcription (¶24); (2) the prohibition to take breaks with co-worker Ramonita Rohena who was also an Evangelical Christian (¶27); (3) the requirement that she be present at the preliminary hearing of a juvenile whose confession she had transcribed, and, later at other such hearings. (¶29); (4) the refusal to transfer her to Carolina ¶36); (5) sending her a February 16, 2006 letter of reprimand from

CIVIL 06-1093CCC                                  6

an Undersecretary of Justice who threatened her with suspension (¶38) and other warnings (¶41). All of these actions are characterized as reprisals/retaliation for having filed an EEOC complaint based on the violation of the Establishment Clause. See, ¶¶ 26, 28, 32, 36 and 37, Amended complaint. There are no factual allegations in her amended complaint regarding reprisal, other than the actions averred in ¶¶24, 27, 29, 36, 38 and 41 listed above.

In sum, the Court concludes that it has before it two federal claims: to wit, a §1983 claim and a Title VII retaliation claim pursuant to §2000e-3(a) arising after she denounced the placement of Halloween decorations in the 2005 EEOC complaint.

A. Section 1983 Establishment Clause Claim

We note at the outset that neither a state nor a state agency, such as the Department of Justice of Puerto Rico , is a "person" within the meaning of §1983." Ryan v. Illinois Dept. of Children & Family Service, 185 F.3d. 751, 758 (7th Cir. 1999).

The First Amendment provides that "Congress shall make no law respecting an establishment of religion," United States Constitution, Amendment I, Clause 1. The challenged government practice or conduct must be viewed within its particular circumstances to determine whether it constitutes and endorsement or disapproval of religion. The scope of the Establishment Clause was clearly defined in School District of Abington Township, Pennsylvania v. Schempp, 374 U.S. 203, 83 S.Ct. 1560 (1963):

> The First Amendment does not prohibit practices which by any realistic measure create none of the dangers which it is designed to prevent and which do not so directly or substantially involve the state in religious exercises or in the favoring of religion as to have meaningful and practical impact.

Only if the government practice has the effect, intentionally or unintentionally, of communicating a message of government endorsement or disapproval of religion would there be a violation of the Establishment Clause. Establishment Clause jurisprudence has generally followed the guideposts set forth in Lemon v. Kurtzman, 403 U.S. 602, 91 S.Ct.

CIVIL 06-1093CCC                                7

2105 (1971)–whether the challenged law or conduct has a secular purpose, whether its primary purpose is to advance or inhibit religion, and whether it creates an excessive entanglement with religion.

We review the pleadings corresponding to the Establishment Clause claim on this base. The government conduct that plaintiff challenges as offensive to the Establishment Clause is the display of traditional Halloween decorations in her office. There is no allegation in her amended complaint beyond that of a mere display of decorations in the overall setting of the celebration of Halloween festivities. The cats, goblins or screeching mat alone do not convey an endorsement of any religious belief. Such decorations, like Halloween costumes and parties, are linked to the seasonal celebration of a fun-loving tradition in which children are particularly involved in classrooms, neighborhood gatherings and trick or treating. Halloween decorations, like valentines, Easter bunnies, and egg hunts are all secular displays and activities that neither convey religious messages nor constitute religious symbols. Halloween lost its religious and superstitious overtones long ago. It has become instead a commercial holiday enjoyed by communities in its many forms of entertainment. Nor is there any concern here over governmental entanglement for there is no allegation of any contact or interaction between any pagan religion or sect and the governmental institution. Plaintiff bases her Establishment Clause claim solely on the decorations themselves.

Plaintiff Rosa-Ruiz having failed to state a claim for the violation of the Establishment Clause, the §1983 cause of action is dismissed, as is her request for an injunction prohibiting defendants from utilizing Halloween decorations at the office in the future.

B. Free Exercise of Religion Claim

Plaintiff, in her opposition to dismissal (docket entry 13), abandons her pleading based on the violation of the Establishment Clause resulting from the display of the

CIVIL 06-1093CCC                                                8

Halloween decorations. She has now moved her First Amendment Claim from the Establishment Clause that prohibits the state from prescribing or advancing religion to the Free Exercise Clause that prohibits government from proscribing, burdening or restricting freedom of worship:

> Mrs. Rosa complained because she was not allowed to express her objection based on her Pentacostal religion–to the decoration of the halls of the Department of Justice with the sort of Halloween decoration general associated with elementary schools. Mrs. Rosa's complaint is not that the Halloween decorations were posted: although she does find them offensive to her religion, she understands that she must tolerate. Mrs. Rosa's complaint is that she has not been permitted to exercise her freedom of religion by expressing her religious beliefs about the paganism she finds represented in the Halloween decorations.

Plaintiff's opposition, page 3.

Contrary to her recent argument that "her complaint is not that the Halloween decorations were posted," she pursues their removal to the point of seeking in her amended complaint a permanent injunction "against the use of Halloween decorations at the Department of Justice."[3]  The whole thrust of her amended complaint is that the decorations, pagan in nature, went against her own evangelical beliefs. Her new theory is that ripping off her postings protesting the decorations is a violation of the Free Exercise Clause of the First Amendment. Plaintiff, however, never mentions this clause in her amended complaint. The first time that she even portrayed her First Amendment Claim as a violation of the Free Exercise Clause is in her opposition to the dismissal motion (docket entry 13). We will, therefore, consider only the allegations set forth in the pleadings; not the  allegations , as reframed in the opposition,  that would align with the Free Exercise Clause.

We conclude that the allegations that her letter of complaint went unanswered  and that her postings or bulletins complaining about the Halloween decorations were ripped off do not state a claim under the Free Exercise Clause. There are no allegations in the

---

[3] The injunctive relief is requested as part of each of her four substantive claims.

CIVIL 06-1093CCC                                      9

amended complaint that the government suppressed or placed burdens on plaintiff's religious beliefs or that she was denied any employment benefits because of her exercise of such beliefs. For these reasons, the Court finds that plaintiff has not stated a claim under the Free Exercise Clause.

C.  Anti-Retaliation Claim

A reading of the amended complaint convinces us that plaintiff has made sufficient allegations in support of the anti-retaliation claim under Title VII, §2003e-3(a). Whether the challenged retaliatory acts alleged meet the objective standard established in Burlington Northern & Santa Fe Railway Co. v. White, 1265 S.Ct. 2305 (2006) that requires a plaintiff to show that a reasonable employee would have found the challenged action materially adverse is for the jury to consider and decide.

D. Law 100, 29 L.P.R.A. §146

In her Fourth Claim for Relief, plaintiff states at ¶64:

> The acts of defendants, previously stated in this Complaint, also violate Puerto Rico's Act 100 of June 30, 1959, as amended, 29 L.P.R.A. 146 et seq. because religion was a motivating factor and made a difference in the decision to (sic[4]) Mrs. Rosa constructively, and defendants, (sic) or in the alternative unwillfully, engaged in practices that discriminated against Mrs. Rosa on the basis of her religion.

The relevant provision of Section 146 provides:

> Any employer who discharges, lays off or discriminates against an employee regarding his/her salary, wage, pay, or remuneration, terms rank, conditions, or privileges of his/her job, or who fails to or refuses to hire or rehire a person, or who limits or classifies his/her employees in any way which tends to deprive a person of employment opportunities, or that affects his/her status as an employee because of his/her age, . . . race, color

---

[4]There is no word following "to."

CIVIL 06-1093CCC                                         10

> sex, social or national origin, social condition political affiliation
> or political or religious ideology of the employee or applicant for
> employment . . . [s]hall incur in civil liability.

Nowhere in the amended complaint is there any allegation that because of her religion any of the unlawful employment practices set forth in that statute were taken, i.e., discharge, lay off, discrimination regarding salary or remuneration, terms, rank, conditions, or privileges of her job, refusal to hire or rehire, limitations or classifications which tended to deprive her of employment opportunities, or that affected her status as an employee. Section 146 of Law 100 is the Commonwealth counterpart of the substantive provisions of Title VII, 42 U.S.C. §2000e-2(a).

E. Law 80, 29 L.P.R.A. §185(a)

Law 80 provides the terms of compensation when an employee contracted without a fixed term is discharged from his/her employment without good cause. Plaintiff mentions Law 80 in the jurisdictional statement of the amended complaint. However, no claim was made pursuant to this statute.

F.  Law 17, 29 L.P.R.A. §155

This statute declares sexual harassment in employment an illegal practice. Again, plaintiff has cited a statute in the jurisdictional statement without averring a cause of action supported by factual allegations relevant to such statute.

G. Law 115, 29 L.P.R.A. §194(a)

Likewise, there is no allegation made or claim brought under Law 115, 29 L.P.R.A. §194(a), a provision that prohibits discriminating against an employee regarding his compensation, terms, conditions or benefits of employment for offering testimony before a

legislative, administrative or judicial forum in Puerto Rico, when such expressions are not of a defamatory character nor constitute disclosure of privileged information established by law.

H. Eleventh Amendment Immunity/ State Claims

Plaintiff also identifies as sources of claims Article II, Section 8 of the Constitution of Puerto Rico, which grants protection against abusive attacks to a person's honor reputation and family. Incorporating wholesale the preceding paragraphs of her complaint, she conclusorily states that the section is violated, there are no facts. There are no factual allegations, however, that fit such a claim.

The Eleventh Amendment provides: "The Judicial Power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subject of any Foreign State." *U.S. Const. Amend. XI.* This Amendment bars federal suits by citizens against the state or state agencies regardless of the nature of the relief sough. O'Neill v. Baker, 210 F.3d. 41, 47 (1st Cir. 2000) (quoting Pennhurst State School & Hosp. V. Halderman, 465 U.S. 89, 100, 104S.ct. 900 (1984).  Furthermore, it has been clearly established that, for Eleventh Amendment purposes, the Commonwealth of Puerto Rico is treated as if it were a state; consequently, the Eleventh Amendment bars any suit brought against it. Metcalf & Eddy, Inc., v. Puerto Rico Aqueduct and Sewer Auth., 991f2d 935 (1st Cir. 1993); Ramírez v. Puerto Rico Fire Serv., 715 F.2d 694, 697 (1st. Cir. 1983).  The eleventh Amendment bars suits in federal courts by private parties against an unconsenting state and said bar extends to government instrumentalities which are an arm or "alter ego" of the state. Mt. Healthy City School District v. Doyle, 429 U.S. 247, 280-281 (1977). It is settled law that the Puerto Rico Department of Justice is an alter ego of the state and cannot be sued in federal court.

CIVIL 06-1093CCC                                    12

Eleventh Amendment immunity has also been extended to suits brought against state officials in the exercise of their duties to uphold government policy where recovery comes from the public fisc. Kentucky v. Graham, 473 U.S.159 (1985).

> Official capacity suits . . . generally represent only another way of pleading an action against an entity of which an officer is an agent. As long as the government entity receives notice and an opportunity to respond, an official capacity suit is, in all respects other than name, to be treated as a suit against the entity.

Id., at 165-66 (internal citations and quotations omitted).

> But a suit against a state official in his or her official capacity is not a suit against the official but rather a suit against the official's office. As such, it is no different from a suit against the state itself.

Will v. Michigan Dept. Of State Police, 491 U.S. 58, 91, (1989)

Also as a result the immunity provided by the Eleventh Amendment, the Court does not have supplemental jurisdiction over pendant state law claims brought against defendants. Raygor v. Regents of the University of Minnesota, 534 U.S. 533 (202) (holding that a non consenting State has Eleventh Amendment Immunity for all pendant state claims bought to federal court pursuant to 28 U.S.C. §1367). Accordingly, the Article 1802 tort claim and the constitutional violation alleged under Article II, Section 8 of the Puerto Rico Constitution are DISMISSED in their entirety.

I. §1802 Claims Against Defendants in their Personal Capacity

Rosa-Ruiz also seeks a monetary award for her alleged her spouse's and her mental and moral damages under Article 1802 of the Civil Code of Puerto Rico, 31 L.P.R.A. §5141 which governs negligence claims.

The amended company raises claims under Article 1802:

> 72.    As a result of the before mentioned acts and omissions, the defendants have directly and intentionally inflicted emotional distress, humiliation, harassment, and mental anguish on the plaintiffs, in an amount in excess of $500,000.00. Mrs. Rosa has suffered immensely because of the illegal activities of

>       defendants and is desperate, depressed and anxious. She has spent endless nights and days of worry, uncertainty and despair. Defendants' actions also caused harm to the physical health of Mrs. Rosa.
>
>       73.   Mrs. Rosa's family life has also suffered. Mrs. Rosa has been harassed at work because of her need to pick up her son from school. The worry that she brings home with her clearly affects her family life. Mrs. Rosa no longer enjoys the happy family that she and Mr. Rivera Alicea enjoyed before defendants began to persecute Mrs. Rosa for her religious beliefs.

(Our emphasis.)

A review of the tort claim against González-Gallofin, plaintiff's supervisor and the two Secretary's of Justice reflects that there are no allegations as to what negligent acts or omissions each of these individual defendants occurred in. The "before mentioned acts and omissions" mentioned in ¶72 of the amended complaint refer to the conduct in retaliation in support of her Title VII, §200e-3(a) claim. The unidentified harassment, by an unidentified harasser, as plaintiff herself states, in ¶73, results from "her need to pick up her son from school," a matter not addressed in this suit. Additionally, the amended complaint does not allege that plaintiff was persecuted for her religious beliefs.

For the reasons stated, the Motion to Dismiss (**docket entry 9**) is GRANTED as to all claims, federal and state, except for the sole remaining plaintiff Coraly Rosa-Ruiz' cause of action brought under the anti-retaliation provision of Title VII, 42 U.S.C. §2000e-3(a).

SO ORDERED.

At San Juan, Puerto Rico, on September 20, 2007.

                                           S/CARMEN CONSUELO CEREZO
                                           United States District Judge